UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>V.<br><br>JAMELE WYDALE MUNDY<br><br>    Defendant. | CRIMINAL NO. 5:23-100-KKC-EBA-1<br><br><br>MEMORANDUM OPINION AND ORDER |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Jamele Wydale Mundy's motion to suppress (DE 34) which seeks to exclude all evidence seized from the search of a residential home. For the reasons stated below, the Defendant's motion to suppress is **DENIED**.

## I.   BACKGROUND

Defendant Jamele Wydale Mundy is charged with possession with intent to distribute 400 grams or more of fentanyl and 28 grams or more of cocaine.

From February 24, 2023 to May 16, 2023, law enforcement investigated Mundy for drug trafficking and money laundering offenses. They conducted surveillance over three primary locations: Mundy's business he operated, Mundy's residence in Lexington, and a suspected stash house on 129 Wysteria Lane in Georgetown, Kentucky. On May 16, 2023, investigators followed Mundy from his primary residence to the suspected stash house. He was the only individual there, and he stayed at the house for approximately 32 minutes.

When Mundy left Wysteria Lane, federal agents asked the Kentucky State Police ("KSP") to conduct a traffic stop of Mundy if he committed any traffic violations. They advised the state police that Mundy may be armed and may attempt to flee officers.

Shortly after, KSP Trooper Gabriel observed Mundy traveling on US-25 in Scott County after leaving Wysteria Lane. Trooper Gabriel testified that his radar indicated Mundy was traveling 10 miles per hour over the speed limit. Accordingly, Trooper Gabriel pulled Mundy over for a speeding violation. Once Mundy was pulled over, Trooper Gabriel observed him lunge over to the passenger compartment twice. Trooper Gabriel exited his vehicle, placed a spike strip behind Mundy's back tire (to prevent a potential flee), and approached Mundy's passenger window.

Once at Mundy's passenger side window, Trooper Gabriel testified that he immediately noticed an odor of marijuana emanating from the vehicle. To get Mundy out of the truck, Trooper Gabriel falsely told him that his rear brake light was out. Trooper Gabriel then alerted Trooper Giles, another officer at the scene, that the car smelled like marijuana by pointing to his nose. When Mundy exited the car, Trooper Gabriel asked him if he had any weed on him. Mundy responded that he did not. Trooper Gabriel then asked Mundy if he minded if he pat him down for weapons. Mundy replied "yeah," put his hands in the air, and turned around to allow the pat-down. (Government Exhibit 3 at 1:34.)

Trooper Gabriel then asked Mundy if he could search his vehicle. Mundy replied "yeah, you can search." (*Id.* at 1:48.) Trooper Gabriel searched the vehicle and found nothing incriminating. After finding no marijuana or paraphernalia, Trooper Gabriel again approached Mundy stating, "you got no weed in your pocket or anything?" (*Id.* at 10:22.) Trooper Gabriel then asked Mundy "mind if I double-check you?" (*Id.* at 10:23.) Mundy did not respond but allowed the pat-down.

During this pat-down, Trooper Gabriel located U.S. currency in Mundy's left front pocket. Trooper Gabriel then asked about a "bulge" below Mundy's waistline and asked if he had something concealed there. (*Id*. at 10:28.) Mundy denied hiding anything. Gabriel continued to search and felt an object in Mundy's pants in the rear. Trooper Gabriel alerted Trooper Giles to come over while Trooper Gabriel placed handcuffs on Mundy. Mundy then relinquished a commercial package containing marijuana from the rear area of his underwear to Trooper Giles. After this, Trooper Gabriel, wearing latex gloves, retrieved a plastic bag from Mundy's front underwear where Gabriel had seen a bulge. (*Id*. at 11:42.)

In total, two packages of marijuana were found: the package from the bulge retrieved by Gabriel and the package relinquished by Mundy. The officers then held Mundy there for a few hours afterwards. During this time, Trooper Gabriel asked Mundy where he was coming from, and he responded "138 Wysteria." (*Id*. at 17:44.)

Later that evening, a warrant was approved to search 129 Wysteria Lane. When police executed the warrant that night, agents seized more than 2 kilograms of cocaine, 2 kilograms of fentanyl, $67,000 in U.S. currency, and multiple items indicative of drug manufacturing and distribution.

The application for the search warrant was completed by Officer Jett. The affidavit he submitted with the warrant request generally addressed the following: (1) regular surveillance by law enforcement of Mundy from February 2023 to May 2023, which indicated ongoing involvement in criminal offenses; (2) Mundy's criminal history, including drug-related convictions for Attempted Trafficking in a Controlled Substance and Possession for a Controlled Substance; (3) Mundy's sophistication as a drug trafficker, including the use of multiple rental vehicles, a front business named Amanda's Kitchen (a restaurant where Mundy had been seen

3

bringing in a couple of grocery bags a week, a likely insufficient amount of supplies for a restaurant business), and a suspected stash house in Scott County separate from his actual residence in Fayette County; (4) Mundy's connections to the stash residence on Wysteria Lane included the fact that the utilities to the residence were in Mundy's name, no one appeared to live there (trash cans were never brought out for collection and the yard was not kept), Mundy was observed visiting the residence three times for short durations, and he was present at the Wysteria residence immediately prior to the traffic stop; (5) proof generated from the traffic stop on May 16, 2023 after he left the Wysteria residence including marijuana concealed on his person and approximately $1,900 in U.S. currency; and (6) false statements Mundy made during the traffic stop when asked about the address of the Wysteria residence.

Mundy now seeks to suppress from evidence all items obtained by the search of the Wysteria Lane residence because he claims the affidavit contained items and information obtained pursuant to an unlawful search and seizure.

## II. ANALYSIS

Mundy challenges the stop on multiple grounds. He argues (1) Trooper Gabriel did not have probable cause to make the stop in the first place; (2) placing the spike strip behind Mundy's tire amounted to an arrest without probable cause; (3) the duration of the stop was impermissibly extended; (4) there was no probable cause for a second body search; and (5) the officers did not inform Mundy of his Miranda rights before conducting a custodial interrogation. Mundy contends that these alleged violations should result in the suppression of evidence obtained from the execution of the search warrant at 129 Wysteria Lane.

Although some of the issues Mundy points to may be a close call, the search is validated by the good-faith exception. The good-faith exception provides that evidence seized in reasonable

reliance on a later-invalidated search warrant should not be excluded so long as two exceptions are not met. *United States v. Leon*, 468 U.S. 897 (1984). First, the warrant application must not be "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. Second, the warrant application must not contain intentional or reckless falsehoods that mislead the magistrate judge. *Id.* at 914. Here, neither exception applies.

As to the first exception, a reasonable officer could fairly rely on Officer Jett's affidavit. This was not the kind of "bare bones" affidavit barred by *Leon*. An affidavit is "bare bones" if it does not "state more than 'suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge'" or "make 'some connection' between the illegal activity and the place to be searched." *United States v. Ward*, 967 F.3d 550, 554 (6th Cir. 2020) (quoting *United States v. Christian*, 925 F.3d 305, 312-13 (6th Cir. 2019) (en banc)).

In this case, the affidavit contained information gathered from a nearly three-month long investigation of Mundy. (DE 38-1.) This information included that during this time, Mundy drove six different vehicles which were registered in four different states and were mostly rental cars. Officer Jett noted in the affidavit that this is a known counter-surveillance tactic. Mundy also owned a restaurant business that appeared to be a front since he only went there a few days a week and supplied the restaurant with just a couple bags of groceries per week. Additionally, Mundy had prior drug related charges. The affidavit also provided a connection between Mundy's suspected narcotics operation and 129 Wysteria Lane. It explained that Mundy often made brief stops at the Wysteria Lane house, and the utilities were under his name. The yard was not kept, and the trash bins were never taken to the curb on collection days. Officer Jett believed based off his training and experience that Mundy was using the residence as a stash house for

narcotics or large sums of U.S. currency. The affidavit included that after Mundy left 129 Wysteria Lane on the day of the stop, officers found two ounces of marijuana and $1,900 of U.S. currency on his person. Mundy also lied to officers about where he was coming from and gave them a false address of 138 Wysteria Lane. With all this information, the affidavit states sufficient factual circumstances to support a reasonable finding of probable cause. Accordingly, the affidavit is not invalidated by the first exception.

Regarding the second exception, Mundy does not point to any intentional or reckless falsehoods in the affidavit. The only statements Mundy disputes in the affidavit are that marijuana was found on him and that he lied about the address of Wysteria Lane. He does not contend that these statements were false, just that they were the product of unconstitutional conduct. Moreover, the body cam footage confirms that these statements are accurate. As such, this exception does not preclude the good faith exception's applicability here.

The affidavit submitted satisfies the *Leon* good faith exception, and no exceptions to the exception apply. Accordingly, Mundy's motion for suppression (DE 34) is denied.

This 5th day of June, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY